**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **FILIMON RESENDEZ, #R33877,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20-cv-496-SMY** |
| | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **LYNN PITTMAN, and** | ) | |
| **DEANNA BROOKHART,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiff Filimon Resendez, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983.  He alleges that Defendants Lynn Pittman, D.O. and Wexford Health Sources Inc. were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Now pending before the Court is Defendants' Motion for Summary Judgment (Doc. 82), to which Resendez has not responded.  For the following reasons, the motion is **GRANTED**.

### Factual Background

Construed in the light most favorable to Resendez, the evidence and reasonable inferences establish the following facts relevant to the pending motion:

Resendez has been incarcerated since 2002 (Doc. 83-1, p. 18).  He was housed at Lawrence Correctional Center from June 2018 until August 2021.  *Id*. at p. 19, p. 29.  Dr. Lynn Pittman was employed by Wexford as the Medical Director at Lawrence from February 1, 2019, until July 20, 2020 (Doc. 83-2, p.1).  During the relevant period, Wexford was contracted with the State of Illinois to provide certain medical services to certain individuals in IDOC custody (Doc. 83-3, p.

1).

Resendez was seen by a nurse on February 22, 2019, for complaints of a lump to his right upper chest in the collarbone area.  He self-reported pain at the level of 6 on a scale of 1-10 and that "the pain went up."  The nurse observed swelling, no discoloration and that his active range of motion was okay but had "loud clicks."  She provided Resendez with Ibuprofen 200mg (18 tablets) and referred him to a physician.  *Id.* at p. 15.  She also documented that she observed a round hard lump to the collar bone area.  She spoke with nurse practitioner ("NP") Sara Stover who ordered an x-ray of Resendez's chest and right clavicle and to schedule him with the NP after the x-rays.  *Id.* at p. 16.  A urine dip was performed and was within normal limits (Doc. 53-2, p. 2).

An x-ray of Resendez's right clavicle and chest was taken on February 26, 2019 (Doc. 53-4, p. 19).  The radiologist's impression of the x-ray was that it was an unremarkable right clavicle.  *Id*. at p. 100.

In March 2019, Resendez underwent a periodic medical history which involved an interview and physical examination by NP Stover.  *Id*. at pp. 2-5; 69; 169.  NP Stover documented that Resendez's right clavicular x-ray was within normal limits and that he had a hard lump on his right shoulder/chest that was not shown on the x-ray.  She noted that Resendez's upper extremities had strength and range of motion within normal limits.  *Id*.  Her assessment was that Resendez had right shoulder pain.  She prescribed Naproxen 500mg (NSAID) for 6 months.

Resendez saw Dr. Pittman for the first time on October 29, 2019.  He self-reported dysuria for years and that he was told that he did not have a urinary tract infection.  He also self-reported right clavicular displacement for 11 months with pain when he lays on his right side.  Dr. Pittman examined Resendez and observed that he had anterior displacement of the right clavicular head

with decreased range of motion of the cervical, thoracic, and lumbar spine.  She recommended a trial of postural support and OMT (osteopathic manipulative treatment) (Doc. 83-2, p. 4; 83-4, p. 31).   She also concluded that Resendez had dysuria with a negative urinalysis and prescribed a trial of Pyridium 200mg to be taken daily for three days.  A urine dip was performed and was within normal limits (Doc. 83-4, p. 108).  Dr. Pittman did not believe that a referral to an offsite urologist or orthopedist was medically necessary (Doc. 83-2, p. 4).

On December 18, 2019, Dr. Pittman saw Resendez for complaints of right clavicular pain and continued dysuria (Doc. 83-2, pp.4-5).  She documented that he was not provided the Pyridium she ordered at the last visit.  *Id.*  She examined Resendez and observed that his displaced anterior right clavicular head had improved placement with OMT.  *Id.*  She reviewed sleeping posture and support with him.  *Id.*  She documented to repeat the urinalysis and prescribed Pyridium for 3 days. *Id.*  In the plan section of her note, Dr. Pittman documented that she provided Resendez with 6 tablets of Phenazopyridine (Pyridium), Ibuprofen 200mg and instructed him to return to the Medical Doctor Call Line in 3 days.  *Id.*

Dr. Pittman enter an order to repeat urinalysis and urine culture on December 20, 2019 (Doc. 83-4, pp. 34, 78).  The urinalysis results were with normal limits (Doc. 83-4, p. 109).  Dr. Pittman did not believe that a urology referral was medically necessary because Resendez's urinalysis results were normal and he appeared to respond well to the Pyridium (Doc. 83-2, p. 10). Resendez testified that the Pyridium helped him urinate more often but did not "do anything" with the burning upon urination (Doc. 83-1, p. 40).  It was his impression that Dr. Pittman was trying to relieve his symptoms of dysuria by going to get him the Pyridium.  *Id.* at p. 45.  He also testified that he believed Dr. Pittman was a very good doctor and that she was trying to do the very best that she could for him, but that the "system" did not permit her to do some of the things she wanted

to do (Doc. 83-1, at p. 45:10-22).

On January 8, 2020, Dr. Pittman saw Resendez again for complaints of his right clavicular and a cyst on his left wrist.  Her assessment was that Resendez had a right clavicular deformity and to continue OMT.  *Id.* at p. 35.  She instructed Resendez to return to the clinic in 2 months (Doc. 83-4, p. 35).  Resendez testified that he performed the stretches that Dr. Pittman recommended and that the stretches help bring relief to his lower back (Doc. 83-1, pp.42-43).

Resendez saw Dr. Pittman on March 5, 2020.  Dr. Pittman examined Resendez and observed that he had a prominent right clavicular head (Doc. 83-4, p. 39).  In her assessment, Dr. Pittman noted to request an orthopedic evaluation as there was no improvement with OMT or sling support of past year.  *Id.* at p. 39.  She placed an offsite orthopedic referral that day and noted that Resendez's slipped right clavicular head impairs arm function and shoulder flexion/extension.  *Id.* at p. 62.  According to the medical records, this was Dr. Pittman's last visit with him (Doc. 83-2, p. 6).  Wexford approved the orthopedic referral on March 10, 2020 (Doc. 83-4, p. 63).

On June 17, 2020, Resendez had an x-ray taken of his right clavicle (Doc. 83-4, at p. 45).  The x-ray showed, "There is mild narrowing with spurring at AC joint.  No acute fracture, destructive or erosive abnormality. Soft issue is unremarkable."  The radiologist's impression was AC joint degenerative changes (arthritis) on the right with no acute abnormality.  *Id.* at p. 101, 167.

On July 15, 2020, Resendez was seen by a nurse and self-reported, "It's getting bigger." The nurse noted that he self-reported right shoulder/clavicular neck pain with headaches and dizziness.  She took his vitals and referred him to a physician or NP.  *Id.* at p. 45.

On July 30, 2020, the Lawrence Health Care Unit ("HCU") faxed Resendez's x-rays to

Carle Orthopedics for their review with instructions to call the facility to schedule the evaluation (Doc. 83-4, at pp. 47, 64-65).  Dr. Pittman did not recall the specific reasons for the delay in scheduling Resendez's orthopedic evaluation.  However, in March 2020, when Resendez's orthopedic referral was approved, the COVID-19 pandemic began, and many non-emergency offsite medical visits were postponed or canceled altogether due to the risks of COVID-19 transmission (Doc. 83-2, at p. 8).

Dr. Pittman left her position as Medical Director at Lawrence Correctional Center in July 2020 (Doc. 83-2, p. 7).  After leaving her position at Lawrence, she did not provide any medical treatment to the inmates at Lawrence Correctional Center, including Resendez.  *Id.*

Between August 2020 and August 2021, Resendez saw medical providers at Lawrence on six occasions for complaints of collarbone or scrotal pain and burning with urination.  An on-site ultrasound in August 2020 showed swelling on the right sternoclavicular joint with some overgrowth of soft tissue (Doc. 83-4, pp. 48-49, 66-67).  The orthopedic provider reviewed the ultrasound and had no concerns.  *Id*. at pp. 102, 168.  In September 2020, a nurse noted that the HCU received a call from Carle Orthopedics indicating that the provider had reviewed the films sent and also had no concerns.  *Id*. at p. 49.  She noted that the x-ray results were normal and there was no need for follow-up.  *Id*. at p. 49.

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – that is where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).  If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted.  *Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners.  *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  An inmate alleging deliberate indifference must show that he faced a "substantial risk of serious harm," and that prison officials knew about that risk and disregarded it by "failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  A plaintiff bringing a claim of deliberate indifference to medical needs must offer evidence that he suffered from an objectively serious medical condition, and that the defendant knew of and disregarded a substantial risk of harm.  *Murphy v. Wexford Health Sources Inc.*, 962 F.3d 911, 915 (7th Cir. 2020).  Here, Defendants argue that Resendez has failed to present evidence from which a reasonable jury could find either element.

A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would perceive the need for a doctor's attention."  *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).  Though this typically refers to an "acute" problem (e.g. a fracture or a wound), chronic or degenerative conditions that may escalate if not treated properly can also be objectively serious.  *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016

A reasonable jury could find that Resendez's clavicular head displacement and complaints of dysuria were objectively serious medical conditions.  Both conditions were diagnosed by his treating physicians who prescribed a variety of treatments including, various pain medications, Pyridium for his dysuria, and postural support and OMT for his clavicle condition.

Based on the frequency of prescribed treatment, it is reasonable to conclude that receiving no treatment would have resulted in some harm to Resendez.  However, Resendez has presented no evidence from which a jury could reasonably find that Dr. Pittman was indifferent to his objectively serious medical needs.  A medical professional displays deliberate indifference only if her decisions/actions represent a substantial departure from accepted professional judgment, practice, or standards.  *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020).  Courts look to the "totality of an inmate's medical care" to determine "whether that care evidences deliberate indifference to serious medical needs."  *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019).

In this case, Dr. Pittman examined and evaluated Resendez on several occasions and did not believe that a referral to a urologist was medically necessary while he was under her care.  Resendez's urinalysis results from February 22, 2019, October 29, 2019, and December 21, 2019, were all within normal limits.  Dr. Pittman prescribed Pyridium, and according to her notes, Resendez made no further complaints to her regarding dysuria after the December 18, 2019 visit.  After Dr. Pittman left her position at Lawrence, Resendez was evaluated by other providers who also did not refer him for an offsite urology evaluation.

With respect to Resendez's right clavicular complaints, Dr. Pittman referred him to an orthopedic specialist for an evaluation.  After reviewing Resendez's x-ray films, the orthopedic specialist determined that there were no concerns.

In sum, Dr. Pittman made the appropriate referrals for outside medical evaluations for Resendez (which were approved by Wexford). And there is no evidence that her treatment was a significant departure from accepted professional standards.[1]

---

[1] Because Dr. Pittman was not deliberately indifferent to Resendez's medical needs, Wexford cannot be liable. *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) (holding that the defendant physician was not deliberately indifferent and

**Conclusion**

For the foregoing reasons, Defendants Lynn Pittman, D.O. and Wexford Health Sources Inc.'s Motion for Summary Judgment (Doc. 82) is **GRANTED**.  As no claims remain, the Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:  January 30, 2023**

**STACI M. YANDLE**
**United States District Judge**

---

that Wexford cannot be held liable for damages because there is no underlying constitutional violation) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).